# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| APPALACHIAN POWER COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 7:14-cv-00535 |
| ) | |
| WILLIAM W. NISSEN, II, and ) | MEMORANDUM OPINION |
| LORA J. NISSEN, ) | |
| ) | By: Hon. Michael F. Urbanski |
| Defendants. ) | United States District Judge |

This case was filed on October 3, 2014 by plaintiff Appalachian Power Company ("APCO"), which has a federal license to operate a hydroelectric dam project on Smith Mountain Lake. APCO's complaint in this case alleges that the Nissens, who are property owners of a shorefont parcel of land in Franklin County, Virginia, have begun building a dock that violates APCO's claimed property rights. Prior to filing a responsive pleading, the Nissens filed a motion seeking my recusal. As recusal is not required in this case, I will **DENY** the motion. Nonetheless, in the interest of judicial economy and to serve the policy of promoting public confidence in the judiciary, I will exercise my discretion and ask the Chief Judge to transfer the case to another judge of this court.

### I.

The Nissens' motion seeks recusal pursuant to both 28 U.S.C. § 455(b)(2) and § 455(a). The former mandates recusal "[w]here in private practice [the judge] served as lawyer in the matter in controversy, or a lawyer with whom [the judge] previously practiced law served during such association as a lawyer concerning the matter." 28 U.S.C. § 455(b)(2). The Nissens' recusal request

under § 455(b)(2) is premised primarily on the grounds that, in 2000 and 2001, while I was still in private practice, attorneys at my firm represented APCO in a lawsuit filed against different landowners of different property concerning a different alleged encroachment at Smith Mountain Lake, Appalachian Power Co. v. Longenecker, No. 7:00-cv-731 (W.D. Va.). The complaint in Longenecker was filed on September 14, 2000.[1] United States District Judge James C. Turk, who presided, granted summary judgment in favor of plaintiff APCO, and the case was closed on July 11, 2001.

During the pendency of that lawsuit, I was employed at the law firm of Woods, Rogers & Hazlegrove, PLC ("Woods Rogers").[2] Several of my former colleagues from that firm—William B. Poff, Michael K. Smeltzer, and Matthew P. Pritts—appeared as counsel of record for APCO in the Longenecker case. I had no involvement in that case, nor do I recall having any involvement in any matter relating to APCO's property rights at Smith Mountain Lake. I became a United States Magistrate Judge on January 23, 2004 and a United States District Judge on May 13, 2011.

Under the terms of § 455(b)(2), my recusal is required only if Longenecker and the instant case are the same "matter in controversy." Review of the court file in Longenecker indicates APCO sought removal of travel trailers and decking from a campground at Mitchell's Point Marina in Bedford County. In contrast, the suit against the Nissens involves a boat dock they started building in 2014 on their property in Franklin County. Quite obviously, the two cases do not remotely concern the same matter in controversy. Thus, no recusal under § 455(b)(2) is required.

The Nissens also seek recusal under § 455(a). Section 455(a) requires a judge to disqualify himself "in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C.

---

[1] As I had no knowledge of the Longenecker case prior to the Nissens' recusal motion, I requested that the case be retrieved from the court's archives for review.

[2] At some point, the firm name changed to Woods Rogers, PLC.

2

§ 455(a). I left the practice of law in January, 2004, more than ten years before APCO sued the Nissens. Nevertheless, the Nissens contend that my decade old association with Woods Rogers compels recusal under § 455(a) and 28 U.S.C. § 144. As there is no reasonable basis to question my partiality, these provisions do not require recusal.

II.

A. Recusal Is Not Required Under Section § 455(b)(2).

There is no basis for recusal under § 455(b)(2). In United States v. DeTemple, 162 F.3d 279 (4th Cir. 1998), the Fourth Circuit rejected an attempt to paint the "matter in controversy" language of § 455(b)(2) with the broad brush advanced by the Nissens. In DeTemple, the defendant who sought recusal was charged in a criminal case with arson, wire fraud, and bankruptcy fraud. 162 F.3d at 282. The judge, while an attorney in private practice, had written four letters to the defendant on behalf of the judge's then-client, Contractors Supply, seeking to collect a debt owed by the defendant. Id. The letters were written in 1987 and 1988. In 1989, the defendant filed for personal bankruptcy and identified Contractors Supply as one of his creditors. Id. In 1993, he was charged in the indictment at issue. Id.

In discussing whether the judge's former representation of Contractors Supply against the defendant required recusal under § 455(b)(2), the DeTemple court acknowledged that the bankruptcy fraud prosecution "clearly implicated the interests of the bankruptcy creditors, including the judge's former client, Contractors Supply. Had [the] bankruptcy fraud gone undiscovered, Contractors Supply would have been one of its victims [and] arguably . . . would [have] receive[d] a smaller payment, or no payment at all, upon distribution." Id. at 284. Despite this connection, the Fourth Circuit held that the debt owed by the defendant to Contractors Supply did not play any role

3

in either the prosecution of defense of his charges and could not be a sufficient "matter in controversy" to require recusal under § 455(b)(2). Id. at 285.

The DeTemple court also rejected the defendant's assertion that recusal was required because of work performed by the judge's former law partners during the time he was at his firm. Specifically, one former law partner had represented the defendant's ex-wife in her divorce proceedings from defendant, and the ex-wife then testified at the defendant's criminal trial. Id. at 285. Another former law partner had represented the selling bank in a transaction where the defendant's parents purchased land, and the attempted arson of that real property "provided the basis for Count One of the indictment." Id. The DeTemple court noted that, if the arson had been successful, the bank would have received the insurance proceeds and concluded that the particulars of the sale "did play a part in the criminal case against DeTemple." Id. Nonetheless, that work was "too attenuated to be considered the same matter in controversy." Id. at 286.

In support of this last conclusion, the opinion in DeTemple cited to two other cases approvingly:

> Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1, 839 F.2d 1296, 1302 (8th Cir. 1988) (issues in dispute must be "sufficiently related" to constitute parts of the same matter in controversy); Dixie Carriers, Inc. v. Channel Fueling Serv., Inc., 669 F. Supp. 150, 152 (E.D. Tex. 1987 (that two suits might have some facts in common not controlling on whether they qualify as same matter in controversy).

Id. at 286.

Other decisions from the Fourth Circuit and lower courts within the circuit have continued to reaffirm that a connection between the prior representation and the case before the judge must be a significant one to satisfy the "matter in controversy" test under § 455(b)(2). See, e.g., United States v. Walton, 56 F.3d 551, 556 (4th Cir. 1995) (recusal not required in criminal case involving charges

4

related to possession with intent to distribute marijuana where district judge's former law firm, during judge's tenure there, represented defendant in four prior controlled substance offenses); United States v. Black, 490 F. Supp. 2d 630, 652 (E.D.N.C. 2007) (recusal not required under § 455(b)(2) where judge previously represented plaintiffs in an official action suit against person who was criminal defendant in the case at bar, where former case asserted a state constitutional challenge to a redistricting statute and present case included allegations that defendant used improper means to manipulate election results, as well as to push certain legislation in exchange for payments).

Under this precedent, the Longenecker case does not have a sufficiently strong relationship to be the same "matter in controversy" as this case. To be sure, the cases involve the same lake, and both concern APCO's operation of the Smith Mountain Hydroelectric Project under a license issued to APCO by the Federal Energy Regulatory Commission ("FERC"). See VA Timberline, LLC v. Appalachian Power Co., 343 F. App'x 915, 916 (4th Cir. 2009). As explained by the Fourth Circuit in VA Timberline, the FERC license issued to APCO requires it to obtain and retain title to the project lands in fee or retain rights to the lands sufficient to operate the project. Id. The similarities between Longenecker and the instant case end there.

These two cases involve different parcels of land in different counties owned by different people with different chains of title and deeds. They also involve different structures causing the alleged encroachment (camping trailers and decks versus a boat dock). Count I of the Complaint filed by APCO against the Nissens alleges a violation of a FERC License Order and a Shoreline Management Plan. The particular FERC License Order which APCO claims the Nissens have violated was not issued until December 15, 2009, more than five years after I left Woods Rogers. Moreover, the Shoreline Management Plan was first approved by FERC on July 5, 2005, more than

5

a year after I left Woods Rogers.[3] Additionally, in Longenecker, there were deeds other than the flowage easement deed at issue in the Nissens' case. In short, the issues in each case are plainly different and turn on the specific property rights conveyed with regard to each specific parcel of property and on the nature and location of the alleged encroaching structures on each separate parcel.[4]

Further undermining any argument for recusal under § 455(b) is the temporal distance between the Longenecker case and the instant dispute. The Nissens did not even purchase their property or start building the dock at issue until a dozen years after Longenecker was decided and a decade after I left my former firm.[5] This, too, undercuts any suggestion that the matters are so closely connected that they are the same "matter in controversy" requiring recusal.

Other courts have taken an even narrower view of a "matter in controversy," suggesting that it should be "read as applying only to the case that is before the court as defined by the docket number attached to that case and the pleadings contained therein." Blue Cross & Blue Shield of R.I. v. Delta Dental of R.I., 248 F. Supp. 2d 39, 46 (D.R.I. 2003) ("Delta Dental"); see Pitrolo v. Cnty. of Buncombe, No. 1:06cv199, 2013 WL 588753, at *5 (W.D.N.C. Feb. 13, 2013) (citing Delta Dental approvingly); see also Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1, 839 F.2d 1296, 1302 (8th Cir. 1988) (noting that Eighth Circuit precedent "apparently preclude[s]" any argument that different cases may constitute the same "matter in controversy" for purposes of § 455(b)(2)). But see Old Republic Nat. Title Ins. Co. v. Warner, No. 1:12CV91, 2013 WL 2403597

---

[3] Obviously, APCO's Shoreline Management Plan was not an issue in the earlier Longenecker case as it was not approved by FERC until 2005.

[4] Additionally, the Nissens have raised a jurisdictional challenge not raised in Longenecker. The court's denial of the motion to recuse is not intended to reflect any opinion on the jurisdictional challenge, which is left for another judge to decide.

[5] According to the complaint, the property at issue was conveyed to defendants by a deed dated April 14, 2014. Dkt. No. 1 at ¶ 21.

6

(N.D. W. Va. May 31, 2013) (in dicta, stating that the conclusion reached by Delta Dental "contradicts Fourth Circuit precedent").

The case principally relied upon by the Nissens, In re Rodgers, 537 F.2d 1196, 1197 (4th Cir. 1976), does not support recusal here. Rodgers concerned the criminal trial of former Maryland governor, Marvin Mandel, and others for mail fraud and racketeering. Part of the evidence in that criminal trial was to be testimony from the district judge's former law partner about events that took place while the judge was still at the firm. The instant case presents no such concerns.

My conclusion that recusal is not required is further buttressed by guidance provided to federal judges regarding recusal under the judicial canons:

> A judge should recuse under Canon 3C(1)(b) when a case is so closely related to a matter handled by the judge's former firm while the judge was there that it should be considered the same matter in controversy (i.e., common parties, overlapping factual issues, and the decision will have preclusive effect). . . .

See Guide to Judiciary Policy, Vol. 2C, § 3.3-1(i) (available at http://www.uscra.org/pdf/2014GuideJudicialPolicyVol2.pdf (last visited November 17, 2014)). Under this test, too, the case at bar is not sufficiently connected to Longenecker to be "closely related." Instead, the landowners are different, the properties are different, the alleged encroachments are different, and the Longenecker decision does not have any preclusive effect on the instant case.[6]

For all of the foregoing reasons, recusal is not required under § 455(b).

---

[6] The Heidel case raised by the Nissens in their reply brief is even more attenuated. Review of the court's opinion in that case reflects that it was a breach of contract action, described by the court as "essentially involv[ing] a dispute concerning the wording of a building permit." Heidel v. Bedford County and Appalachian Power Company, No. 6:03cv00002, Dkt. No. 13, at 1 (W.D. Va. March 31, 2003). As such, Heidel provides no basis for recusal.

7

## B. Recusal Is Not Required Under Section § 455(a).

Defendants also seek recusal under § 455(a), which directs a judge to recuse "in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The standard to be applied is an objective one, and directs a judge to recuse himself if "a reasonable person with knowledge of relevant facts might reasonably question his impartiality." United States v. Cherry, 330 F.3d 658, 665 (4th Cir. 2003). "The analysis assumes that a reasonable person not only knows all the relevant facts, but also understands them. In weighing recusal, the trial judge must carefully weigh the policy of promoting public confidence in the judiciary against the possibility that those questioning his impartiality simply might be trying to avoid what they apprehend may be an adverse ruling." Kolon Indus., Inc. v. E.I. duPont de Nemours & Co., 846 F. Supp. 2d 515, 531 (E.D. Va. 2012) (internal citations omitted).

Defendants point to two basic factors as supporting recusal under § 455(a). First, they focus on the fact that APCO is represented by Mr. Pritts, with whom I was previously associated at Woods Rogers. Second, they focus on the proceedings and my recent ruling in another, unrelated case brought by APCO against other property owners on Smith Mountain Lake. See Appalachian Power Co. v. Arthur, No. 7:09-cv-00360 (W.D. Va. August 11, 2014). Defendants do not complain about the Arthur ruling itself and are likely aware of the principle that "[j]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." Belue v. Leventhal, 640 F.3d 567, 575 (4th Cir. 2011) (quoting Liteky v. United States, 510 U.S. 540, 555 (1994)). Instead, they suggest that my denial of a joint motion to continue that case, which had been pending for five years on the court's docket, somehow indicates bias. Neither of these points would lead an objective observer who knows and understands all the relevant facts to question my impartiality.

8

I left Woods Rogers more than a decade ago, and only became aware of the Longenecker case through the filing of the recusal motion here.[7] I have no close ties to either of the counsel of record for APCO in this case, Mr. Lee or Mr. Pritts. Mr. Lee joined the firm after my departure, according to his biography on the firm's website, see http://www.woodsrogers.com/attorney_/charles-carter-lee/ (last visited November 17, 2014). To be sure, Mr. Pritts and I worked on a few matters together while I was at the firm more than ten years ago. But I do not believe that any of our work together had anything to do with APCO's property rights at Smith Mountain Lake.

With regard to defendants' assertions about the Arthur case, the Arthurs have submitted a joint affidavit expressing concern because I granted summary judgment in that case rather than continuing the trial date as the parties requested. See generally Dkt. No. 15-1. The Arthurs' affidavit reflects a fundamental misunderstanding of the proceedings in that case.

The dispute between APCO and the Arthurs had been pending on the court's docket since 2009, and was assigned to then Senior District Judge James C. Turk. APCO filed a summary judgment motion on June 20, 2013, and the court issued a Roseboro notice.[8] The Arthurs filed no written response. A summary judgment hearing was held before Judge Turk on July 19, 2013, and the transcript of the hearing indicates that Mr. Arthur and his son were present and participated at the hearing. During the course of that hearing, Judge Turk observed that "Appalachian is in the driver's seat because, you know, they have a right to control below that line." Appalachian Power Co. v. Arthur, No. 7:09cv00360, Dkt. No. 36, at 21. Regardless, Judge Turk stated, "I think you

---

[7] The same is true of the Heidel case mentioned for the first time in the Nissens' reply brief.

[8] Under Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975), when a party moves for summary judgment against a pro se party, the court provides notice to the pro se party of the opportunity to file a counter-affidavit or other appropriate materials and is informed that the failure to file such materials could result in dismissal.

9

ought to make one more effort to try to settle this," id. at 22, and set another hearing for August 20, 2013.  No hearing was held on August 20, 2013, however, and the docket reflects that a subsequent status conference set for October 17, 2013 was cancelled.  There are no further docket entries until June 25, 2014.  The docket entry for that date reflects that the court received a letter from counsel for APCO dated June 24, 2014 indicating that "negotiations have been unsuccessful" and requesting a ruling on the summary judgment motion.  Id. at Dkt. No. 25.  Although the Arthurs were copied on that letter, they filed no response.

Judge Turk was on senior status and still handling cases at the time of his death on July 6, 2014.  Shortly before his passing, the Arthur case was reassigned to me.  Id. at Dkt. No. 26.

Considering the age of the case and the fact that it was reportable under the provisions of the Civil Justice Reform Act, 28 U.S.C. § 476, I entered an order on July 3, 2014 setting the case for trial in early September.  Id. at Dkt. No. 27.  I issued my standard civil trial order on July 18, 2014. Id. at Dkt. No. 28.  While work was progressing on the summary judgment opinion, the parties filed a joint motion for continuance of the trial "[t]o allow the parties adequate time to continue settlement negotiations."  Id. at Dkt. No. 29.  As the parties had already had years to work out their dispute, I declined the parties' eleventh hour request to delay this matter further and ruled on the year-old summary judgment motion.  On the same day I entered the summary judgment opinion and dismissal order, August 11, 2014, I denied the joint motion to continue by oral order.  Id. at Dkt. Nos. 30-32.  As is typical for oral orders, it was issued in chambers with no parties present, and no hearing was held.

As I explained in the subsequent order denying the Arthurs' motion for reconsideration, the parties had previously been given ample time to work out a settlement, and they had failed to do so. Id. at Dkt. No. 35.  Quite simply, there was a long-languishing dispositive motion pending in the

10

matter, and I ruled on it in a manner not inconsistent with Judge Turk's observations at the hearing a year earlier. Nothing in the record of the Arthur case, or the court's conduct in it, reflects any bias or prejudice towards any party. Rather, it reflects my obligation to ensure the expeditious and timely resolution of cases pending before me. An objective observer would not conclude otherwise.

One other point bears mentioning. As the court in DeTemple explained, a reasonable observer evaluating all the circumstances under § 455(a) for an appearance of impropriety may also take into account the frequency with which the supposedly biasing circumstances may occur. 162 F.3d at 287. Specifically, "the more common a potentially biasing circumstance and the less easily avoidable it seems, the less that circumstance will appear to a knowledgeable observer as a sign of partiality." Id. (quoting In re Allied-Signal Inc., 891 F.2d 967, 971 (1st Cir. 1989)). Roanoke is a relatively small legal community (especially compared to Washington, D.C., for example, where the Nissens' attorneys are located), and Woods Rogers is one of the two largest firms in it. Currently, there are only two active judges being assigned cases in Roanoke. Thus, the likelihood that Woods Rogers attorneys will be attorneys of record in a case before me is high, and that fact alone does not create any appearance of impropriety or require recusal at so long a date after I left the firm.

Consistent with my ethical responsibilities, I did not work on cases involving my former firm for an appropriate period of time after I came on the bench. It has now been more than ten years since I left private practice, and I am neither required to—nor should I—recuse in every case in which an attorney from my former firm appears. Cf. Old Republic Nat. Title Ins. Co., 2013 WL 2403597, at *6 ("The Fourth Circuit has recognized that overly cautious recusal would improperly allow litigants to exercise a 'negative veto' over the assignment of judges simply by hinting at impropriety.") (citing DeTemple, 162 F.3d at 287). A judge need not recuse himself because of

11

"unsupported, irrational or highly tenuous speculation," DeTemple, 162 F.3d at 287 (quoting In re United States, 666 F.2d 690, 694 (1st Cir. 1981)), and I am not required to do so here.

    **C.    Recusal Is Not Required Under 28 U.S.C. § 144.**

Finally, the court briefly addresses whether recusal is required under 28 U.S.C. § 144.[9] Although defendants do not raise § 144 in their motion itself, their supporting memorandum suggests, "regrettably," that "events . . . in [the Arthur case], combined with [my] past professional history of working as a colleague with counsel in this case while that attorney was working on the same matter in controversy, also give rise to a good faith belief on an actual 'bias or prejudice' under 28 U.S.C. § 144," that "would run in favor of" APCO. Dkt. No. 15 at 7.

There is no basis for recusal under § 144. I left Woods Rogers more than a decade before the Nissens purchased their Smith Mountain Lake property and this dispute arose. There is no objective basis to support any claim of actual bias or prejudice as regards a firm I left so long ago. Certainly, the court's handling of the Arthur case does not reflect any "appearance" of impropriety, let alone any actual bias or prejudice against or in favor of any party. In fact, I harbor no bias or prejudice against or in favor of any party in this or the Arthur case. As such, recusal is not warranted under 28 U.S.C. § 144.

### III.

Although I have determined that recusal is not required in this case, I will nonetheless direct that the case be transferred to a different judge. "Carefully weigh[ing] the policy of promoting

---

[9] As a procedural issue, the requirements for seeking recusal under § 144 have not been met here, since they require an affidavit from a party to the proceeding in which recusal is sought and further require a certificate of counsel of record stating that it is made in good faith. See 28 U.S.C. § 144. Here, the only affidavit provided is from the Arthurs, parties to a different—and closed—case. Relatedly, the Arthurs never sought recusal in their case, and, since I was more than ten years removed from my former firm and without any awareness of Longenecker, I had no idea that a recusal request was even a remote possibility. Even if the Arthurs had raised recusal, it would not have been required for the same reasons it is not required here.

12

Case 7:14-cv-00535-NKM-RSB Document 27 Filed 11/24/14 Page 12 of 13 Pageid#: 629

public confidence in the judiciary against the possibility that those questioning [my] impartiality simply might be trying to avoid what they apprehend may be an adverse ruling," Kolon Indus., Inc., 846 F. Supp. 2d at 531, I will err on the side of the former. A transfer at this juncture also will promote judicial economy. Unlike those cases in which recusal is sought after the case has been pending for some time and the presiding judge has already become familiar with the case or issued rulings in it, the recusal here was sought before any ruling by me.[10] While the timing of the request does not require recusal, it makes the transfer decision an easier one, since I have not spent any time on this case and judicial economy does not favor my keeping it.

For the reasons discussed above, defendants' motion for recusal, Dkt. No. 13, will be **DENIED**, and this case will be **TRANSFERRED** to the Chief Judge of this court for reassignment to a different judge.

An appropriate Order will be entered.

Entered: November 24, 2014

*Michael F. Urbanski*

Michael F. Urbanski
United States District Judge

---

[10] Courts often note the timing of the recusal request as a factor weighing against recusal. In particular, often a party seeks recusal after an adverse ruling against it, or based on information it has known for some time during the pendency of the case. Not only do such delays in seeking recusal hamper judicial economy and cause unfairness to other parties, but requiring timely recusal motions also serves to deter tactics by attorneys to "wait and see" until after a judge rules in a case. See United States v. Black, 490 F. Supp. 2d 630, 646-47 (E.D. N.C. 2007) (collecting authority concerning the timeliness of recusal motions and noting the harms associated with an untimely motion); see also E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc., 847 F. Supp. 2d 843, 853-43 (E.D. Va. 2012) (same).

13