# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | |
|---|---|
| APPALACHIAN POWER COMPANY., *Plaintiff,* v. WILLIAM W. NISSEN II, and LORA J. NISSEN, *Defendants*. | CIVIL NO. 7:14-cv-000535 **MEMORANDUM OPINION** JUDGE NORMAN K. MOON |

Appalachian Power Company ("APCO," or "Plaintiff") filed this action on October 3, 2014 pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, and the Federal Power Act, 16 U.S.C. §§ 791a *et seq.* Its complaint arises out of the construction of a boat dock by William Nissen, II and Lora J. Nissen (collectively "Nissens," or "Defendants") on their Smith Mountain Lake property. Plaintiff argues that this construction contravenes both a flowage easement it holds on the property and a license order granted to it by the Federal Energy Regulatory Commission ("FERC"). On February 13, 2015, Defendants filed an Answer and Counterclaim, wherein they requested five separate declaratory judgments.

This matter is now before the Court on Plaintiff's Motion to Dismiss Defendants' Counterclaims. A hearing was held on April 10, 2015, wherein Defendants conceded their first, second, and fifth requests for declaratory judgment. Accordingly I will address only Defendants' third request, wherein they ask me to declare that APCO lacks a property interest sufficient to compel the Nissens to take certain actions on their land, and their fourth request, wherein they ask me to declare that a taking has occurred. For the reasons that follow, I will grant Plaintiff's motion in part and deny it in part.

# I.

APCO operates the Smith Mountain Hydroelectric Project ("the Project") pursuant to a license issued to it by FERC.[1] The Project boundary encompasses the reservoir at Smith Mountain Lake and all lands on the shoreline of the lake falling below a specific elevation, generally 800 feet above mean sea level ("FMSL"). When FERC initially granted APCO the license in 1960, it required APCO to acquire title to or the right to use all property necessary to construct, maintain, and operate the Project. Accordingly, APCO obtained property rights to all lands abutting the lake and falling below 800 FMSL, and now either owns these lands in fee or holds flowage right and easement deeds on them.

Plaintiff manages the Project in accordance with a Shoreline Management Plan ("SMP") which it developed in 2003 and FERC later incorporated into the terms of the license that it issued APCO. The SMP provides detailed guidelines as to how development should be managed within the Project's boundaries. It imposes various restrictions aimed at promoting shoreline stabilization and the protection of aesthetic and environmental quality. APCO polices lakeside landowners' compliance with the SMP through a permitting program, whereby it issues permits authorizing specified uses of Project land and waters. For example, the SMP establishes certain "Vegetative Cover Regulations," which require that vegetation within the Project boundary be preserved, and that none may be removed without a permit from APCO. The SMP also limits what can be constructed between an elevation of 795 and 800 FMSL, restricting structures within this zone to those that provide access to a dock, as well as pilings or cables installed for purposes of enhancing the stability of a floating structure. Docks may be built upon receiving a permit

---

[1] The Federal Power Act vests FERC with the authority to license hydroelectric projects for the use and benefit of interstate and foreign commerce. By an order dated April 25, 1960, FERC issued a fifty-year license to APCO delegating its duties and responsibilities for the Project to Plaintiff. On December 15, 2009, FERC issued an order extending this license for an additional ten years.

from APCO, but must comply with SMP regulations regarding their location, length, height, and maximum size.

Defendants own a parcel of land abutting Smith Mountain Lake. Their property is located at 164 Windmere Trail, Moneta, Virginia 24121 and consists of approximately 1.4 acres, with some land lying above and some land lying below the Project boundary of 800 FMSL. The parcel was conveyed to Defendants subject to all easements, restrictions, reservations and covenants of record by deed dated April 14, 2014. Plaintiff APCO had previously obtained an interest in this property by means of a Flowage Right and Easement Deed ("Flowage Easement") dated September 12, 1960, by and between APCO and Defendants' predecessors-in-title. The pertinent provisions of the Flowage Easement read as follows:

> NOW, THEREFORE, for and in consideration of Ten Dollars ($10.00) and other valuable considerations in hand paid by Appalachian to Grantors, the receipt of which is hereby acknowledged, Grantors hereby grant, bargain, sell and convey with covenants of general warranty, unto Appalachian forever the right to overflow and/or affect so much of said premises as may be overflowed and/or affected, continuously or from time to time in any manner whatsoever, as the result of the construction, existence, operation and/or maintenance of the aforesaid dam and/or power station, the impounding of the waters of said river and tributaries and/or the varying of the level of the so impounded waters by reason of the operation of said power station, including any pumping as part of such operation.
>
> ALSO, for the above mentioned considerations, Grantors hereby grant to Appalachian the further right to enter upon said premises at any time and from time to time and, at Appalachian's discretion, to cut, burn and/or remove therefrom any and all buildings, structures, improvements, trees, bushes, driftwood and other objects and debris of any and every kind or description which are or may hereafter be located on the portion of said premises below the contour the elevation of which is 800 feet. . . .
>
> Grantors shall have the right to possess and use said premises in any manner not inconsistent with the estate, rights and privileges herein granted to Appalachian, including (a) the right to cross said land to reach the impounded waters for recreational purposes and for obtaining their domestic water supply and water for their livestock and (b) the right to extend and maintain necessary fences across said land and into the impounded waters for a sufficient distance to prevent

livestock from wading around said fences.

> AND, FOR THE ABOVE MENTIONED CONSIDERATIONS, GRANTORS HEREBY COVENANT AND AGREE TO AND WITH APPALACHIAN THAT:
>
> (a) If Grantors exercise any of the rights set forth [above] or make any other use of said premises or of any other lands or, of any waters in or to which any estate, right or privilege is now or hereafter owned or held by Appalachian, such exercise or use shall be at the sole risk of Grantors and no claims shall be mode against Appalachian for any injuries or damages arising out of or in connection with such exercise or use and such other use shall be deemed to be made under a revocable license from Appalachian and not adverse to any right, title, interest or privilege of Appalachian;
>
> (b) Grantors will not cause, permit or suffer any garbage, sewage, refuse, waste or other contaminating matter to be cast, drained or discharged onto the portion of said premises below the contour the elevation of which is 800 feet or onto or into any of the other lands or waters referred to in (a) above or directly or indirectly into such impounded waters. . . .

Neither party disputes that the Nissens' property is subject to this instrument.

Defendants have commenced construction of a dock within the Project boundary, and have not sought or obtained a permit for this construction. APCO alleges that the Defendants' dock is oversized, and if completed, will not conform to the requirements of the SMP. APCO also alleges that Defendants have constructed a road, removed vegetation, and placed fill within the Project boundary. APCO contends that these actions are also in violation of the SMP.

## II.

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of North Carolina v. Martin,* 980 F.2d 943, 952 (4th Cir.1992). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of

a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, (2007) (internal citations omitted). A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir.2000). "Factual allegations must be enough to raise a right to relief above the speculative level," *Twombly,* 550 U.S. at 555, with all allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Chao v. Rivendell Woods, Inc.,* 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).

### III.

Defendants' third request for declaratory judgment asks me to declare that the Flowage Easement does not grant APCO sufficient property rights to compel Defendants to cease construction of the dock, undertake re-vegetation of the area, or to remove the road and any related fill. Defendants argue that APCO's rights under the Flowage Easement are limited to activity necessary to prepare the land for the development of the dam and to ensure its continued operation. They also contend that construction of the dock falls within the rights retained by the grantors, specifically the Flowage Easement's language that the grantors shall have "the right to cross said land to reach the impounded waters for recreational purposes."

The rules controlling the interpretation of an easement granted by deed are the same as those that govern the construction of other written documents. *Pyramid Development, L.L.C. v. D & J Associates,* 553 S.E.2d 725, 728 (Va. 2001). When, as here, the easement is unambiguous

- 5 -
Case 7:14-cv-00535-NKM-RSB   Document 61   Filed 04/24/15   Page 5 of 9   Pageid#: 967

and granted by deed, "the rights of the parties must be ascertained from the words of the deed, and the extent of the easement cannot be determined from any other source." *Gordon v. Hoy,* 178 S.E.2d 495, 496 (Va. 1971). The terms of the easement "are to be construed by giving the words used their natural and ordinary meaning," and "[t]he language in the deed is taken most strongly against the grantor and most favorably to the grantee." *Bailey v. Town of Saltville*, 691 S.E.2d 491, 493 (Va. 2010). Determining the nature of an interest in land conveyed by deed is a question of law. *Id*.

I turn first to Defendants' argument that APCO does not have a property interest such that it can compel the Nissens to cease construction of the dock. Defendants' position is at odds with the plain language of the Flowage Easement. That instrument grants APCO the right to

> . . . enter upon said premises at any time and from time to time and, *at Appalachian's discretion, to cut, burn and/or remove therefrom any and all buildings, structures, improvements*, trees, bushes, driftwood and other objects and debris of any and every kind or description which are or may hereafter be located on the portion of said premises below the contour the elevation of which is 800 feet.

(emphasis added). The Flowage Easement vests APCO with the power to remove structures located below 800 FMSL at any time and for any reason. There is no language in the instrument limiting APCO's ability to exercise this right to situations where the structures to be removed are interfering with the impounding of waters or the operation of the Smith Mountain Hydroelectric Dam. Thus I reject Defendants' contention that APCO may only exercise the rights granted to it by the Flowage Easement when necessary to ensure that waters may be impounded or that the operation of the dam is not interfered with. *See McCarthy Holdings LLC v. Burgher*, 716 S.E.2d 461, 464-65 (Va. 2011) (explaining "[g]enerally, when an easement is created by grant or reservation and the instrument creating the easement does not limit its use, the easement may be used for any purpose to which the dominant estate may then, or in the future, reasonably be

- 6 -

devoted. However, this general rule is subject to the qualification that no use may be made of the easement, different from that established when the easement was created, which imposes an additional burden on the servient estate.") (quoting *Shooting Point, L.L.C. v. Wescoat,* 576 S.E.2d 497, 502-03 (Va. 2003)) (internal quotation marks and citations omitted).

Moreover, the provision of the Flowage Easement retaining to the grantors "the right to cross said land to reach the impounded waters for recreational purposes" does not affect APCO's right to remove structures located below 800 FMSL. Giving these words their natural and ordinary meaning, the right to cross the land to access the lake for recreational purposes does not carry with it a right to build structures on that land, even if those structures are in furtherance of recreational use of the waters. Furthermore, if the Flowage Easement had reserved to the grantors a right to construct certain structures to facilitate recreational use of the waters, such a reservation would be expressly included in the language of the instrument, as was the case with the reservation of grantors' right to construct livestock fences below 800 FMSL. Therefore, Defendants' have failed to state a plausible basis on which I could declare that APCO lacks sufficient property rights to compel them to remove the dock.

I cannot say that this same logic applies to removal of the road. It is unclear at this stage in the proceedings if the portions of the road falling below 800 FMSL qualify as a structure or improvement such that APCO possesses the right to remove it. Accordingly, there is a plausible basis to support that portion of Defendants' request for declaratory relief.

Turning next to the alleged placement of fill, I note that the Flowage Easement also imposes on the grantors an obligation to

> . . . not cause, permit or suffer any garbage, sewage, refuse, waste or other contaminating matter to be cast, drained or discharged onto the portion of said premises below the contour the elevation of which is 800 feet or onto or into any of the other lands or waters referred to in (a) above or directly or indirectly into

such impounded waters. . . .

Again, there is no indication in the instrument that the grantors' responsibility under this subsection extends only to the extent that the "garbage, sewage, refuse, waste or other contaminating matter" discharged may not interfere with APCO's ability to impound the waters or to operate the hydroelectric dam. The plain language of the instrument forbids the grantors from refuse, waste, or other contaminating matter, such as fill, below 800 FMSL.

Defendants' claim that APCO lacks a property interest sufficient to compel them to undertake re-vegetation of their property, however, is plausible on its face. There is nothing in the plain language of the easement that grants APCO such a right.

## IV.

Defendants' fourth request for declaratory judgment asks me to declare that a taking has occurred should I determine that the FERC License Order or the SMP superseded or extinguished the property rights retained by Defendants under the Flowage Easement. The Fifth Amendment of the United States Constitution prohibits the taking of private property without just compensation. *Lingle v. Chevron U.S.A., Inc.,* 544 U.S. 528, 536 (2005). There are two types of taking, categorical and regulatory. *Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach*, 420 F.3d 322, 330 (4th Cir. 2005). A categorical taking involves a "direct government appropriation or physical invasion of private property." *Chevron*, 544 U.S., at 537. Even when there is no physical invasion of private property, however, a regulatory taking occurs "when a regulation or limitation on land use interferes with a landowner's rights but does not deprive the land of all economically viable use." *City of Myrtle Beach*, 420 F.3d at 330.

Neither party contends that the FERC License Order or the SMP altered the assignment of property rights between APCO and the Nissens. Rather, the FERC License Order, and the

SMP incorporated therein, set forth requirements for use of Project land which the licensee, APCO, must comply with. The licensee enforces these requirements by means of, and to the extent of, their property interest in the land, in this case the Flowage Easement. Since APCO's ability to regulate the Nissens' land is limited to its rights under the Flowage Easement, there is no basis for me to determine that the FERC License Order or the SMP deprived or interfered with the Nissens' property rights. Consequently, Defendants' have failed to state a plausible basis on which I could declare that a taking has occurred.

V.

For the reasons stated herein, Plaintiff's Motion to Dismiss Defendants' Counterclaim will be GRANTED in part and DENIED in part. An appropriate order follows.

ENTERED: This 24th day of April, 2015

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE