# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | |
|---|---|
| APPALACHIAN POWER COMPANY., | CIVIL NO. 7:14-cv-000535 |
| *Plaintiff,* | |
| v. | |
| WILLIAM W. NISSEN II, and LORA J. NISSEN, | **MEMORANDUM OPINION** |
| *Defendants.* | JUDGE NORMAN K. MOON |

## I. INTRODUCTION

Appalachian Power Company ("APCO," or "Plaintiff") filed this action on October 3, 2014, pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.* and the Federal Power Act ("FPA"), 16 U.S.C. §§ 791a *et seq.* Plaintiff alleges that William Nissen, II and Lora J. Nissen (collectively "Nissens" or "Defendants") are constructing a dock on Smith Mountain Lake that violates APCO's legal rights. The construction and related changes made to the land, Plaintiff argues, violate both a flowage easement that APCO holds on Defendants' property and a license order granted to APCO by the Federal Energy Regulatory Commission ("FERC"). Compl. ¶ 34. Plaintiff holds these rights because it operates the Smith Mountain Hydroelectric Project on the Smith Mountain and Leesville Lakes in Southwest Virginia. *Id.* ¶ 7. Plaintiff seeks the following: (1) a declaratory judgment that the Defendants are in violation of its easement; (2) an injunction requiring Defendants to repair some of the alleged damage caused by the dock's construction; and (3) an injunction to remove the dock if Defendants fail to obtain a permit from APCO approving its construction. Compl. ¶¶ 34, 38. Despite Defendants efforts to

muddy the waters, this case is a simple one: APCO seeks to determine if Defendants' construction violates the terms of its FERC License and, if so, whether the flowage easement grants it sufficient property rights to halt the construction and undo certain changes made to the land.

The matter is now before me upon Plaintiff's motion for summary judgment. In its motion, APCO asks this Court enter judgment upon its request for declaratory relief. More specifically, APCO asks me to determine that: (1) it has the authority to regulate the use and occupancies of the project lands; (2) the Nissens have constructed a dock in violation of APCO's rights; (3) the Nissens have removed vegetation in violation of APCO's rights; (4) the Nissens have constructed a road in violation of APCO's rights; and (5) the Nissens have engaged in unauthorized fill activity in violation of APCO's rights. Furthermore, APCO requests that summary judgment be entered for it on the Nissens' request for declaratory relief. The Nissens object to these requests. However, they have not moved for summary judgment on their own behalf. As this opinion will explain, I will grant APCO's motion for summary judgment on every item, except I will deny APCO's request that this Court require the Nissens to act affirmatively. Such a requirement would contravene the plain language of the Flowage Easement.[1]

The Court will also grant a permanent injunction in favor of APCO to prevent future violations as explained further below.

## II. BACKGROUND

---

[1] APCO asks the Court to force the Nissens to remove the dock, fill, and road that has been constructed in violation of the Flowage Easement. As discussed below, APCO does not have the right to require the Defendants to act affirmatively. APCO does, however, have a right to remedy the problem and request damages. Due to this right, I am going to give the Nissens the ability to develop a plan to remedy the problem so that they can have some determination. If the Nissens decline this offer, APCO will then have the ability to remedy the problem and obtain damages.

Case 7:14-cv-00535-NKM-RSB   Document 79   Filed 12/18/15   Page 2 of 23   Pageid#: 1258

Plaintiff APCO operates the Smith Mountain Hydroelectric Project ("the Project") pursuant to a license issued to it by the Federal Energy Regulatory Commission ("FERC"). The Federal Power Act ("FPA"), 16 U.S.C. § 791a *et seq*., vests FERC with the authority to license hydroelectric projects for the use and benefit of interstate and foreign commerce. By an order dated April 25, 1960, FERC issued a fifty-year license to APCO for the Project, thus delegating its duties and responsibilities to APCO. FERC extended this license for an additional ten years by an order issued on December 15, 2009. The Project boundary encompasses the reservoir at Smith Mountain Lake and all lands on the shoreline of the lake lying below a specific elevation, 800 feet above mean sea level ("FMSL"). When FERC granted APCO the license, it required APCO to acquire title to or the right to use all property necessary to construct, maintain, and operate the Project. Accordingly, APCO has obtained property rights to all Project lands (those below 800 FMSL), and either owns them in fee simple or has obtained rights of occupancy and use via flowage rights and easement deeds. At dispute in this case is whether the property rights acquired on Defendants' property allow APCO to enforce the requirements of the FERC license.

Plaintiff manages the Project in accordance with a Shoreline Management Plan (the "SMP"), which was developed in 2003. This plan was developed through community input and FERC approved the plan. Since approval, the SMP has been incorporated by and is now a part of APCO's license from FERC. The SMP provides detailed guidelines for managing development within the Project's boundaries. Accordingly, the SMP imposes various restrictions on landowners aimed at promoting shoreline stabilization and the protection of aesthetic and environmental quality. Among other things, the regulations address the location, length, height, and maximum size of docks. The SMP also establishes certain "Vegetative Cover Regulations," which require that vegetation within the Project boundary be preserved, and that

none may be removed without a permit from APCO. The SMP further limits what can be constructed between an elevation of 795 and 800 FMSL. Structures located within this zone are limited to those that provide access to a dock, as well as pilings or cables installed for purposes of enhancing the stability of a floating structure.

Defendants own a parcel of land on Smith Mountain Lake. Their property is located at 164 Windmere Trail, Moneta, Virginia 24121. Defendants' property consists of approximately 1.441 acres, some of it lying above and some of it lying below the Project boundary of 800 FMSL. The parcel was conveyed to Defendants subject to all easements, restrictions, reservations, and covenants of record by Deed dated April 14, 2014. Plaintiff APCO had previously obtained easement rights over Defendants' Property pursuant to the Flowage Right and Easement Deed ("Flowage Easement") dated September 12, 1960, by and between APCO and Defendants' predecessors-in-title. The Flowage Easement provides APCO with:

> [T]he further right to enter upon said premises at any time and from time to time and, at Appalachian's discretion, to cut, burn and/or remove therefrom any and all buildings, structures, improvements, trees, bushes, driftwood and other objects and debris of any and every kind or description which are or may hereafter be located on the portion of said premises below the contour the elevation of which is 800 feet.

Flowage Easement 1. The Flowage Easement also reserves certain rights to the Grantor:

> Grantors shall have the right to possess and use said premises in any manner not inconsistent with the estate, rights and privileges herein granted to Appalachian, including (a) the right to cross said land to reach the impounded waters for recreational purposes and for obtaining their domestic water supply and water for their livestock and (b) the right to extend and maintain necessary fences across said land and into the impounded waters for a sufficient distance to prevent livestock from wading around said fences.

Flowage Easement 2.

Defendants have, without obtaining permission from APCO, commenced construction of a dock, removed vegetation, and constructed a road, all on the portion of their property that falls

within the Project boundary. The Defendants' proposed dock, which will be located close to a neighboring lot, will measure roughly 3,520 square feet in size, approximately 110 feet in length, and over 26 feet in height. Plaintiff APCO alleges that the proposed dock does not conform to the requirements of the FERC License Order and integrated SMP, as it is "oversized, too long, too high, and is located too close to the neighboring property." Compl. ¶ 31. Additionally, Defendants' road construction violated the SMP by destroying vegetation and placing additional fill within the Project boundary.

### III. FLOWAGE EASEMENT EXCERPT

NOW, THEREFORE, for and in consideration of Ten Dollars ($10.00) and other valuable considerations in hand paid by Appalachian to Grantors, the receipt of which is hereby acknowledged, Grantors hereby grant, bargain, sell and convey with covenants of general warranty, unto Appalachian forever the right to overflow and/or affect so much of said premises as may be overflowed and/or affected, continuously or from time to time in any manner whatsoever, as the result of the construction, existence, operation and/or maintenance of the aforesaid dam and/or power station, the impounding of the waters of said river and tributaries and/or the varying of the level of the so impounded waters by reason of the operation of said power station, including any pumping as part of such operation.

ALSO, for the above mentioned considerations, Grantors hereby grant to Appalachian *the further right to enter upon said premises at any time and from time to time and, at Appalachian's discretion, to cut, burn and/or remove therefrom any and all buildings, structures, improvements, trees, bushes, driftwood and other objects and debris of any and every kind or description which are or may hereafter be located on the portion of said premises below the contour the elevation of which is 800 feet*. . . .

Grantors shall have the right to possess and use said premises in any manner not inconsistent with the estate, rights and privileges herein granted to Appalachian, including (a) the right to cross said land to reach the impounded waters for recreational purposes and for obtaining their domestic water supply and water for their livestock and (b) the right to extend and maintain necessary fences across said land and into the impounded waters for a sufficient distance to prevent livestock from wading around said fences.

Flowage Easement 1–2 (emphasis added).

Case 7:14-cv-00535-NKM-RSB   Document 79   Filed 12/18/15   Page 5 of 23   Pageid#: 1261

## IV. Legal Standard

Summary judgment is warranted if the Court concludes that no genuine issue of material fact exists for trial and that the moving party is entitled to judgment as a matter of law, based on the totality of the evidence, including pleadings, depositions, answers to interrogatories, and affidavits. *Whiteman v. Chesapeake Appalachia, L.L.C.*, 729 F.3d 381, 385 (4th Cir. 2013) (citing Fed. R. Civ. P. 56). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To demonstrate that a genuine issue of material fact exists, a party may not rest upon his own mere allegations or denials. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Rather, the party must "proffer[] sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993). To this end, a district court has an "affirmative obligation . . . to prevent 'factually unsupported claims [or] defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 323–24).

## V. Appalachian Power's Declaratory Judgment Requests

### A. The Nissens' Alleged Dispute of Material Fact

Before discussing APCO's requests for declaratory judgment, the Nissens' contention concerning the FERC Licenses must be examined.[2] In their brief, the Nissens argue that "which

---

[2] Two of the Nissens' arguments can be disposed of quickly. The first argument suggests that the Court rule that APCO's historical regulation, or lack thereof, should prove that APCO did not have the right to regulate their property. Whether APCO regulated property in the past or not is not at issue before the Court. The issue concerns only the regulation of the Nissen property at the current time. Therefore, the Court cannot concern itself with what APCO decided to regulate or not to regulate in the past, as it is irrelevant to the current action. The current action is based on questions concerning a Flowage Easement that the Court can ascertain from the clear language of the easement itself. *See Gordon v. Hoy*, 178 S.E.2d 495, 496 (Va. 1971)

Second, the Nissens claim that APCO's current license creates an impermissible expansion of the scope of the rights under the Flowage Easement. As discussed above, the Flowage Easement itself is a broad grant of

version of Appalachian's FERC License Order the Court applies when determining the rights

Appalachian has in the Nissens' property pursuant to the Flowage Easement is a material fact in

dispute because it addresses an issue that is the focal point of this Case." Def. Mem. Opp. 6.

More specifically, the Nissens argue that the 1960 FERC License Order should be interpreted

against the Flowage Easement to determine APCO's responsibilities to FERC (*i.e.,* the limitation

of the Flowage Easement under Virginia law).

While the Nissens have couched their argument as a dispute of material fact, the

determination of an easement and its limitations are questions for the Court. The rules

controlling the interpretation of an easement granted by deed are the same as those that govern

the construction of other written documents. *Pyramid Development, L.L.C. v. D & J Associates*,

553 S.E.2d 725, 728 (Va. 2001). The terms of the easement "are to be construed by giving the

words their natural and ordinary meaning," and "[t]he language in the deed is taken most

strongly against the grantor and most favorably to the grantee." *Bailey v. Town of Saltville*, 691

S.E.2d 491, 494 (Va. 2010). Determining the nature of an interest in land conveyed by deed is a

question of law. *Id.* Furthermore, an easement that contains no limitation is limited by a

reasonableness inquiry based on the original purpose of the grant: in this case, the original

purpose of the Project, to run the hydro electric plant, as determined through the current FERC

license. *McCarthy Holding L.L.C. v. Burgher*, 716 S.E.2d 461, 464–65 (Va. 2011) (quoting

*Shooting Point, L.L.C. v, Wescoat*, 576 S.E. 2d 497, 502–03 (Va. 2003)).

Although the Nissens' argument concerns a question of law rather than fact, it is worth

examining. Presumably, the Nissens suggest that the 1960 FERC license provides a better

---

authority. Such a broad grant is limited to the original purpose of the easement—to construct and maintain the dam and power station. The current license only ensures that this original purpose is maintained. *McCarthy Holdings, L.L.C.*, 716 S.E.2d at 464–65. Thus, the current license is a limit on the unfettered language in the Flowage Easement as determined by the original Project grantor, FERC, whom has determined what is needed to maintain the dam and power station in the Project.

determination on the original purpose of the grant. *See McCarthy Holdings, L.L.C.*, 716 S.E.2d at 464–65. Specifically, the Nissens point to Article 21 of the April 25, 1960, Order granting APCO its FERC License Order. In that Article, the Order specifically stated that "The Licensee shall, *prior to flooding*, clear all lands. . . ." (emphasis added). After the introduction, the Order mirrors the language of the Flowage Easement obtained in that same year. Due to this, the Nissens argue that the entire Flowage Easement concerns only the "limited privilege to flood the land subject to the Flowage Easement for the purpose of constructing and operating the Project." Defs. Mem. 9.

While the argument has been cleverly sculpted, it cannot be accepted. Virginia law limits the unfettered rights that APCO is given under the Flowage Easement through the FERC License and SMP.[3] *See McCarthy Holdings, L.L.C.*, 716 S.E.2d at 464–65. Under the plain terms of the easement, APCO would be allowed to enter the land and remove anything for any reason. Thus, according to the Nissens, the original purpose of the Flowage Easement grant was to flood the land and construct Smith Mountain Lake.[4] This argument fails.

In the first paragraph of the Flowage Easement, the easement specifically states that it concerns the "construction, existence, operation and/or maintenance of the aforesaid dam and/or power station." This language proves that the original purpose of the Flowage Easement grant concerned an ongoing obligation, on APCO's part, to operate and maintain the dam and power station—obligations that continue to be monitored and determined through updated Licenses and SMPs. These updated obligations were even included in the 1960 License; the same License that

---

[3] Under this analysis, the FERC License and SMP is used to ensure that APCO does not use its unfettered easement grant outside of what is needed to run the Smith Mountain Lake project.

[4] Specifically, the Nissens are suggesting that the original purpose of the Project was just to build the Project rather than concerning itself with running it in the future. However, the running of the Project after it was built was the purpose of building it in the beginning.

the Nissens contend should be interpreted in this case. The 1960 License incorporated the terms and conditions of the Federal Powers Act, and such rules and regulations as the Commission has issued or prescribed. 1960 FERC License, 23 F.P.C. 624 (1960). Specifically, Section 10(c) of the FPA, 16 U.S.C. §803(c), was incorporated into the license. In Section 10(c), a licensee can be required to conform to rules and regulations that the Commission makes from time to time, thus making the retention of the property rights on APCO's behalf important. 1960 FERC License, 23 F.P.C. 624, at Ordering Paragraph B. Thus, the 1960 FERC License provided the possibility that FERC would issue new licenses in the future providing new rules and regulations.

Therefore, the 2009 License and 2014 SMP must be analyzed in this case to limit the unfettered language of the Flowage Easement. FERC, the original grantor of the Project, has the best ability to determine what actions APCO must take in order to succeed with the original grant of the easement—to run the dam and power station. Therefore, FERC has just ensured that the Project maintains its purpose through the changing times of technology and activity as evidenced through the updated FERC Orders and SMP. These documents concern the current affairs of the Project and provide an updated determination of what is required of APCO to satisfy the original grant of the easement—to maintain and operate the dam and power station—under the reasonableness inquiry. *McCarthy Holdings, L.L.C.*, 716 S.E.2d at 464–65. If, however, FERC, through its updated order, would require more than APCO's easement allows, then APCO would be required to obtain the proper property rights.[5]

Because FERC, the grantor of the Project, would understand what is needed to satisfy the original grant of the easement, to run the dam and power station, the 2009 License and 2014 SMP are the proper documentation to be analyzed in this case in connection with the Flowage

---

[5] In this case, I find that FERC's Order does not require more than APCO's Flowage Easement.

Easement.

**B. Appalachian's Authority To Regulate the Use of the Land under the Federal Power Act, The FERC License Order, and the SMP**

In this request, APCO asks the Court to declare: "That, under the FPA, the FERC License Order issuing and amending Appalachian's license for the Project, and the SMP, Appalachian has the authority and responsibility to regulate uses and occupancies of the Project lands." Compl., at 12.

As mentioned above, the FPA, FERC License Order, and the SMP provide the limitation on the unfettered power under the Flowage Easement; therefore, these documents provide the specific authority relating to APCO's use and occupancy of the Project Land. As was previously stated in this case, "FERC delegated to APCO its FPA-related duties and responsibilities with respect to operation of the Project. It did so by means of a license order that incorporated the terms of the SMP." Dkt. No. 34, at 7. In addition, this Court has also held that "APCO not only receives regulatory authority from FERC to regulate the Project's boundaries in compliance with the SMP, but also possesses a Flowage Right and Easement Deed entitling it to enforce the SMP with regard to the portion of defendants' property within the Project boundary." *Appalachian Power Co. v. Arthur,* 39 F. Supp. 3d 790, 797 (W.D. Va. 2014); *see also VA Timberline, L.L.C. v. Appalachian Power Co.,* 343 Fed. Appx. 915, 917 (4th Cir. 2009) ("FERC delegated the regulation of the project lands at issue to APCO in 1998 and further delegated its responsibilities to APCO when FERC adopted the SMP.").

Therefore, there is no dispute of material fact that Appalachian has the ability to regulate the use and occupancies of the Project lands under the Flowage Easement as expounded by the Federal Power Act, the FERC License Order for the Project, and the SMP.

**C. The Nissens Construction of the Dock**

In this request, APCO asks the Court to find that "[t]he Nissens have commenced construction of a dock in violation of the SMP, APCO's Obligation under the FERC Orders for the Project, and the Flowage Easement."  Pl.'s Mem., at 14.

At the Motion to Dismiss stage, I noted that "Defendants' argument that APCO does not have a property interest such that it can compel the Nissens to cease construction of the dock. . . is at odds with the plain language of the Flowage Easement."  Mem. Op., Dkt. No. 61, at 7.  In addition, this Court in *Arthur*, interpreting the exact same Flowage Easement language, found that "APCO's easement deed expressly allows APCO to. . . effect the removal of non-conforming structures like the ones at issue here."  *Arthur*, 39 F. Supp. 3d at 797; *see also Pressl v. Appalachian Power Company*, No. 7:15-cv-00343, Oct. 6, 2015, Mem. Op., at 14 (holding that a Flowage Easement with the exact same language "provides APCO with the ability to determine the necessary steps that a party must take to build a dock to begin with"); *Appalachian Power Company v. Longenecker*, No. 7:00-cv-00731, July 7, 2001 Mem. Op. (W.D. Va.).

In this case, the Nissens' dock is clearly within the Project boundary, making it subject to the Flowage Easement.  Pl.'s Mem. Ex. D.  Furthermore, the Nissens admit that their planned dock would be 3,520 square feet, which is well above the maximum size of 1,500 square feet allowed at this location.  Defs.' Answer to Pl.'s Compl. ¶ 28; SMP, at 39–40.

Therefore, no dispute of material fact exists that Nissens' dock violates APCO's rights under the Flowage Easement, FERC Orders, and SMP.

**D.  The Nissens Removal of Vegetation**

In the third request for declaratory judgment, APCO requests this Court to determine that "[t]he Nissens have removed vegetation in violation of the SMP and the FERC Orders for the Project."  Pl.'s Mem., at 16.   Under the Flowage Easement, APCO has the right to "affect so

much of said premises . . . continuously or from time to time in any manner whatsoever as the result of . . . operation and/or maintenance of the aforesaid dam and/or power station . . . ." Flowage Easement, at 1.

While this language gives APCO a very broad right, Virginia law requires that this easement be limited to the original easement grant, which as discussed above can be determined through the current FERC license which incorporates the SMP. *See McCarthy Holdings, L.L.C.*, 716 S.E.2d at 464–65. Under the SMP's Vegetative Cover Regulation, "[v]egetation within the project boundary must be preserved if present." SMP, at 73–74. Although the SMP allows a permit to modify or remove vegetative cover, the Nissens failed to request a permit and still removed vegetation.[6] Therefore, their removal of the vegetation violated APCO's right under the Flowage Easement.

However, APCO's requirement that the Nissens re-vegetate the land is a closer issue.[7] The easement imposes only a negative duty on the landowners to not remove vegetation; however, the easement does not provide APCO the power to require the landowners to re-vegetate the land, especially assuming that the original removal of the vegetation was done with the good faith belief that the landowner had the right to remove the vegetation. *See Gordon v. Hoy,* 178 S.E.2d 495, 496 (Va. 1971) ("[T]he rights of the parties must be ascertained from the words of the deed, and the extent of the easement cannot be determined from any other source."); *Bailey v. Town of Saltville*, 691 S.E.2d 491, 493 (Va. 2010) ("[A]re to be construed by giving the words used their natural and

---

[6] The Nissens raise a contention with APCO's statement that they removed "virtually all the vegetation." This is legally irrelevant. Whether the Nissens removed all or one piece of vegetation, the vegetation that has been removed, within the Project, is in violation of APCO's Flowage Easement.

[7] This analysis also concerns APCOs ability to require the Nissens to remove the road, fill, and dock that violate the Flowage Easement.

ordinary meaning."); *see also Pyramid Development, L.L.C. v. D & J Associates,* 553

S.E.2d 725, 728 (Va. 2001).  For example, the Flowage Easement specifically states:

> "*Appalachian has the further right to enter upon said premises* at any time and from time to time and, at Appalachian's discretion, to cut, burn and/or remove therefrom any and all buildings, structures, improvements, trees, bushes, driftwood and other objects and debris of any and every kind or description which are or may hereafter be located on the portion of said premises below the contour the elevation of which is 800 feet. . . ."  (emphasis added)

As the clear language shows, APCO has the right to enter upon the land and remove all

buildings, structures, improvements, trees, bushes, driftwood, and other objects and debris.  *Id.*

This language does not give APCO the ability to force the Nissens to act.  However, APCO

could recover damages for the labor and materials used to remedy the Nissens violation of the

easement.  *See Snead v. C & S Properties Holdings Co., Ltd.,* 279 Va. 607, 614 (2010) (awarding

easement holder compensatory and nominal damages in addition to the costs of removal).

Therefore, it would be proper to give the Nissens the opportunity to remedy such violation on the

front-end so that they could have the opportunity to decide where such vegetation should be

placed and in a manner most cost-effective while remedying the violation.  *See e.g., Pizzarelle v.

Dempsey*, 259 Va. 521, 531–32 (2000) (explaining that injunctive relief concerning the removal

of encroaching structures is a matter of discretion and remanding for a determination on the

allocation of such cost of removal).

By failing to request permission and still removing the vegetation, the Nissens have

violated APCO's rights under the Flowage Easement.[8]  *See Pressl,* Oct. 6 Mem. Op. p. 14, fn. 9

("APCO's ability to control. . . vegetation surrounding the Project is the same purpose as the

---

[8] In addition, APCO argues that the Nissens' removal of vegetation violates its rights because it leads to introduction of contaminating matter into the Project boundary and impounded waters.  Under this argument, APCO contends that the clearing of the vegetation leads both to increase erosion and introduction of other contaminates from rain runoff.  While this argument is plausible, it is a question of fact as to whether increase erosion and contamination occurs.  Therefore, summary judgment would not be proper under this argument, however, it is not needed due to the plain language of the Flowage Easement.

original easement grant, to run the hydro electric dam. . . ."). Although this violation has occurred, APCO's Flowage Easement does not provide it with the power to require the Nissens to re-vegetate the land. However, in order to ensure that the Nissens have the opportunity to remedy the problem in a manner that they find agreeable, I will provide them the opportunity to replace the vegetation.

## E. Nissens' Road

In its fourth request for declaratory judgment, APCO asks the Court to decide that the Nissens have constructed a road in violation of the Flowage Easement. Under the Flowage Easement, APCO has the right to enter upon Defendants' Property at any time to "remove therefrom any and all . . . *improvement* . . . and other objects and debris of any and every kind or description which are or may be located on the portion of said premises below the contour the elevation of which is 800 feet." Black's Law Dictionary defines "improvement" as "an addition to property, usually real estate, whether permanent or not; especially, one that increases its value or utility or that enhances its appearance." Black's Law Dictionary (10th ed. 2014). An earlier version of Black's Law Dictionary defined "improvement" as "a valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purpose." Black's Law Dictionary (6th ed. Abridged 1991); *see also Sellers v. Bles,* 198 Va. 49, 55 (1956) (defining "improvement" as "a valuable addition, or betterment, as a building, clearing, drain, fence, etc., on land."); 9B Michie's Jurisprudence, *Improvements* §1 (2013) ("A valuable addition made to property-usually real estate-or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for a

Case 7:14-cv-00535-NKM-RSB Document 79 Filed 12/18/15 Page 14 of 23 Pageid#: 1270

new or further purpose."). Therefore, each definition accepts the fact that "improvement" is a "comprehensive term, which includes in its meaning any development whereunder work is done and money is expended with reference to the future benefit or enrichment of the premises." *Eppes v. Eppes,* 181 Va. 970, 988 (1943). Furthermore, the Flowage Easement's use of the term "improvement" is preceded by two other very broad and comprehensive terms: buildings and structures. *Sellers,* 198 Va. at 54 ("Improvement is not a word of art having a fixed and definite meaning. It takes color and significance from its surrounding and must be interpreted and given the meaning indicated by its setting. It will be judged by the company it keeps.")

In this case, the Nissens' road[9] fits the definition of the term "improvement." Construction of a road, even a gravel one, requires changes in a property to allow the road to be utilized. The Nissens admit to grading the land and adding gravel as a base to construct the road. Defs. And Countercl. Pls. answer to interrog. No. 10. Therefore, the road construction was an improvement in violation of APCO's Flowage Easement, thus triggering APCO's power to enter the Nissens' property and remove the road. As mentioned above, I will also give the Nissens the opportunity to develop a plan to remove the road as to prevent them from having to pay damages to APCO in the future.

**F. Nissens' Fill Activity**

In this request, APCO requests the Court to find that the Nissens have engaged in unauthorized fill activity in violation of the Flowage Easement. As this Court has previously stated, the "plain language" of the Flowage Easement forbids the Nissens from placing "refuse, waste, or other contaminating matter, such as fill, below 800 FMSL." Dkt. No. 61, at 8. In

---

[9] The road is evidenced by Mr. Byrant in his declaration. Pl.'s Mot. Ex. D, ¶10 and admitted by the Nissens. Defs. Answer to Pl.'s Compl. ¶29.

addition, the SMP specifically prohibits "the depositing or stockpiling of material [] within the project boundary." SMP, at 73.

The Nissens have caused dirt, gravel, and debris to be placed upon, drained, or discharged upon their property that is below the 800-foot elevation contour without APCO's permission. Bryant Dec. ¶ 10.

Therefore, there is no dispute of material fact that the Nissens have violated the SMP and APCO's right under the Flowage Easement.

## VI. NISSENS' COUNTERCLAIM REQUEST

The Nissens filed a Counterclaim for Declaratory Judgment with their Answer. The Counterclaim for Declaratory Judgment incorporated the Nissens' responses to the allegations in Appalachian's Complaint, and asserted five separate requests for declaratory judgment. In response, Appalachian filed a Motion to Dismiss the Nissens' Counterclaims, and that motion was granted in part and denied in part. Specifically, this Court dismissed the Nissens' first, second, fourth and fifth requests for declaratory judgment. Therefore, only one request, the third request for declaratory judgment remains. This request asks the Court to find:

A. That the Flowage Easement does not provide Plaintiff with sufficient authority to regulate the Nissens' property under the FERC License Order and SMP;

B . That Plaintiff is not authorized to regulate property within the Project boundary if its property interest in the land that is sought to be regulated does not arise to the requirements of Article 5 of the FERC License Order;

C. That the Nissens' construction of the dock, removal of vegetation, and construction of the road are not in breach of the Flowage Easement;

D. That the Nissens' construction of the dock, removal of vegetation, and construction of the road are authorized because their property is not subject to Plaintiff's FERC License Order or SMP;

E.      That the Nissens are not required under law to cease construction of the dock or other structures, nor are they required under law to undertake revegetation of the area or remove the road and related fill.

F.      That the Nissens are not required to obtain a permit from Plaintiff in order to construct their dock and road and remove vegetation.

Because Requests "A", "C", "D", and "E" were all answered in the preceding sections, I will not discuss them again.   Therefore, summary judgment will be granted in favor of APCO on "A," "C," and "D."   As discussed above, the Flowage Easement does not give APCO the ability to affirmatively require the Nissens to act without Court order. Therefore, Request "E" will be denied to the extent it asks this Court to require the Nissens to re-vegetate or remove the fill.[10] However, the Nissens are required to cease construction of the dock.

Summary judgment will also be granted for Request "F" because it is based on a "proposed" permit rather than one that had been formally entered by the parties.  *Pressl*, No. 7:15-cv-00343, Mem. Op. Oct. 6, 2015 at fn. 11.  Until this permit is formally agreed upon, there is no justiciable controversy.  *Id.*  Furthermore, the Nissens would be required to exhaust their administrative remedies with FERC before seeking judicial review of any problems that they have with any prospective permit.  *Id.*

The Nissens also fail to exhaust their administrative remedies with FERC concerning their last request, Request "B."   Request "B" asks the Court to declare "[t]hat Plaintiff is not authorized to regulate property within the Project boundary if its property interest in the land that is sought to be regulated does not arise to the requirements of Article 5 of the FERC License Order."   Under Article 5, APCO is required to "acquire title in fee or the right to use in

---

[10] As clearly described above and noted in the order accompanying this memorandum opinion, the Nissens will be given the opportunity to remedy the problem rather than having to pay APCO damages for violating its easement rights.

perpetuity all lands . . . necessary or appropriate for the construction, maintenance, and operation of the project." This Court is not the correct forum to raise these contentions. "It is for FERC to decide in the first instance whether the licensee is in compliance with the conditions of the license." *DiLaura v. Power Authority,* 786 F. Supp. 241, 253 (W.D.N.Y. 1991), *aff'd,* 982 F.2d 73, 80 (2d. Cir. 1992). FERC has even issued a ruling on this very issue stating "[s]ince the issuance of its original licenses in 1960, Appalachian Power has obtained all the necessary property rights to project lands in fee or by holding flowage rights." *See* Letter to Cut Unnecessary Regulatory Burden, Inc., re the Property issues at Smith Mountain Pumped Storage Project under P-2210 (July 10, 2015), at 5. Therefore, "[i]t is the FERC, and not this Court, that has the power and the expertise to decide if the license was violated or if the current operating procedures should be changed." *DiLaura*, 786 F. Supp. at 253; *see also Pressl*, Mem. Op. Oct. 6, 2015, at 15–16 (holding that Smith Mountain Lake property owners who are dissatisfied with APCO's permit process must exhaust administrative remedies with FERC before seeking judicial review in the Court of Appeals, not the District Court.").

## VII. APCO'S REQUEST FOR INJUNCTIVE RELIEF

In its complaint, APCO seeks a permanent injunction to:

"requir[e] [the Nissens] to cease construction of the dock (and any other structures), replace the vegetation, remove the road and related fill, on the portion of Defendants' Property within the Project boundary at Appalachian's direction. This injunction also should require the Defendants to remove the dock should they fail to obtain a permit from Appalachian for a dock structure which would meet the requirements of the SMP, or if they should fail to construct the dock according to the terms and conditions of the permit they obtain from Appalachian. In addition the injunction should also permanently enjoin Defendants from occupying Project lands (below the 800 FMSL contour elevation) except in compliance with the requirements of the FERC License Order and the SMP."

Compl. ¶ 38(B).

As previously noted, the plain language of the Flowage Easement does not

provide APCO with the ability to necessarily force the Nissens to act affirmatively as the easement is written to give APCO the ability to act when landowners contravene its rights.[11]  Therefore, a permanent injunction will not be granted to force the Nissens to affirmatively remove the road, dock, and fill, or replace the vegetation.  As discussed above, the Court will give the Nissens the opportunity to develop a plan to remedy such violations before APCO enters the property.  This will allow the Nissens the ability to avoid paying APCO any damages.

Although I decline to enter an injunction requiring the Nissens to affirmatively act, I will enter a permanent injunction for the Nissens to cease constructing the dock and attempt to gain compliance for the dock.[12]  In addition, the permanent injunction will require the Nissens to not violate APCO's rights under the Flowage Easement in the future.  This will allow either the Nissens or APCO to properly remedy the current problems that exist without fear that the Nissens' future actions will not contravene APCO rights under the Flowage Easement.[13]

## A.  Permanent Injunction Analysis

In order to grant a permanent injunction, a court must ensure that four factors are met. These four factors include:

> (1) [T]hat [APCO] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity in warranted, and (4) that the public interest would not be

---

[11] See *infra* V.D.

[12] If this compliance is not accomplished, APCO will have the right, under the Flowage Easement, to enter into the property and remove the dock in its entirety.

[13] For example, if APCO would re-vegetate the land and the Nissens would remove that vegetation, I could find that the Nissens acted in bad faith, thus requiring them to re-vegetate the land , pay for the damages, or give any other remedy available for a party found in contempt of a Court order.

disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006).

### a. Irreparable Injury and Inadequacy of Remedies at Law[14]

While the Supreme Court originally denoted the permanent injunction inquiry as four factors, the first two factors are often fused. *Safeway Inc. v. CESC Plaza Ltd. Partnership,* 261 F. Supp. 2d 439, 469 (E.D. Va. 2003) ("[I]nadequancy of damages and irreparability of harm are often treated interchangeably in the permanent injunction analysis."). "If one is threatened with irreparable injury it is because there is no adequate remedy elsewhere, and if one has no adequate remedy, he will surely suffer irreparable harm. Hence, the cases discuss one or the other and are satisfied when one is found." 10A Michie's Jurisdprudence, *Injunctions* §13.05(3) (2013). Furthermore, "[i]njunctive relief is appropriate to prevent a threatened disturbance in the peaceable use, enjoyment, and possession of real property." *AmJur* 2d, 42 §54. Virginia law also recognizes the use of an injunction to protect the interests obtained through an easement. *See Brown v. Haley*, 233 Va. 210, 216–17 (1987) ("Establishment and protection of an easement by injunction are equitable remedies."); *see also* John L. Costello, *Virginia Remedies* §13.05[3][c] ("An injunction will issue to protect an interest in an easement.").

In this case, an injunction will remedy the problem of the continuing trespass of the Nissens on APCO's property rights under the Flowage Easement. *Levisa Coal Co. v. Consolidation Coal Co.,* 276 Va. 44, 62 (2008) ("[I]njury is deemed irreparable and the owner protected in the enjoyment of his property whether such be sentimental or

---

[14] While this decision does discuss damages as a remedy for the easement violation that has already occurred, those damages have no effect on the analysis of the future violations through a continuous trespass. *Levisa Coal Co. v. Consolidation Coal Co.,* 276 Va. 44, 62 (2008).

Case 7:14-cv-00535-NKM-RSB   Document 79   Filed 12/18/15   Page 20 of 23   Pageid#: 1276

pecuniary."), *cert. denied*, 556 U.S. 1221 (2009).  Furthermore, the Nissens continued violations would cause irreparable harm to APCO's ability to "operate and maintain" the dam and power station as the Flowage Easement protects.  Furthermore, remedies available at law, such as damages, would be inadequate.  As discussed above, without an injunction, the Nissens could continue to violate APCO's rights under the Flowage Easement requiring APCO to return to litigation rather than running the Project.

Therefore, a permanent injunction would be proper because APCO has suffered irreparable injury—injury to its property rights—and remedies available at law are inadequate.

### b.  Balance of the Hardships

The third factor requires the Court to balance the hardships imposed on the defendant if the injunction is granted against the hardships imposed on the plaintiff if the injunction is denied. *See Akers v. Mathieson Alkali Works*, 151 Va. 1, 9 (1928) ("[T]he court should weight the injury that may accrue to the one or the other party, and also the public, by granting or refusing the injunction.).

The only hardship that the Nissens face, if the injunction is granted, would be complying with the terms of the Flowage Easement.  If the injunction is denied, APCO would have significant hardship losing its property rights and running the Project with non-conforming land.

Therefore, the balance of the hardship favors APCO in losing its property rights under the Flowage Easement versus the Nissens' hardship in the erection and removal of structures that violated APCO's rights in the beginning.

### c.  Public Interest

The fourth and final factor under the permanent injunction analysis is whether the

public interest would be served by the requested injunction.

Because the entire purpose of the Smith Mountain Lake Project is to serve the public interest through a scenic lake while running a hydroelectric plant, any injunction that would ensure that APCO could continue to maintain and operate the Project would serve the public. *See e.g.,* SMP, at 1 (establishing that the SMP purpose is to "ensure the protection and enhancement of the Project's recreational, environmental, cultural, and scenic resources and the Project's primary function, which is the production of electricity."). Furthermore, APCO's ability to uphold FERC's delegation is also an important public interest that must be considered.

Therefore, the permanent injunction would ensure that landowners, such as the Nissens, would not violate the future lake users' enjoyment while also ensuring the production of electricity.

### VIII. Conclusion

As set forth above, Plaintiffs' Motion for Summary Judgment is **GRANTED.** However, this opinion does not provide APCO with the right to require the Nissens to remedy the violations. As the accompanying order states, the Nissens will be given an opportunity to remedy the problems. However, if they decline, APCO will have the right to enter the property and seek damages.

In addition, the request for a permanent injunction is **GRANTED** to the extent that this opinion details.

ENTERED:  This $\underline{\text{18TH}}$ day of December, 2015

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE